Johnson, J.
The demurrer involves the examination of two questions :
1. What rights did the plaintiff acquire-in this water-power at lock number eight, by virtue of the conveyance of June 24, 1869?
2. What were the rights acquired by the city of Cincinnati, under the act of March 24, 1863, grauting it authority and permission to use that part of the canal from the east side of Broadway to the Ohio river, for a public highway and for sewerage purposes ?
In fact, these two questions may be resolved into one, and that is: As both plaintiff aud defendant are claiming under grants from the State of Ohio, which is paramount? They will therefore be considered together.
At the threshold of this inquiry it is important to note,. *635 what we regard as a controlling fact — that is, it is not alleged that the water-power in controversy had ever been used. The averment of the petition is that there had been provided, at lock number eight, a sufficiency of -waterpower to drive six pair of mill-stones of a certain capacity ; such power to be derived from the level of the canal, next above said lock, and to be available eleven months in the year.
It is ndt alleged that plaiutiff is the owner of a water privilege which existed or was in use prior to the grant to the city. On the contrary, the fact stated is that there was at that point a water-power, oi a certain capacity, capable of being used, and which the plaintiff intends to use.
In considering the rights of the parties arising under the several acts of the' legislature, we must therefore regard this water-power as so much unused power of which the plaintiff became the purchaser in 1869, and not as a léase of the privilege to use surplus water, existing when the title of the city vested in 1863.
The importance of this'fact will become apparent when we come to construe the statutes applicable to the case.
By the act to provide for leasing the public works of the state, passed May 8, 1861, it was provided (S. & S. 68): “That the governor, auditor, arid treasurer of state be and they are hereby authorized and required, as hereinafter provided, to lease, for the term of ten years, from the day of the approval of the bond herein required, the public works of the state, consisting of the Miami and Erie canal,. . . . and all the side cuts, feeders, reservoirs, lock-houses, collectors’ offices, weigh-locks, and leases of surplus water connected with the same, or appertaining thereto, aud owned by the state, for the purpose of being used in connection therewith, with the right to have additional surplus water; and all moneys derived from the leasing of said public works shall be paid into the treasury of the state.”
The lease, which was afterward made to the lessees, contained, in compliance with the terms of that act, all the *636 covenants, ageements,reservations, and stipulations between the parties, which are found in the act itself.
Among these reservations is the proviso to section 18 (S. •& S. 67), reserving to the state the right to grant to the city ■of Cincinnati any or all that part of said canal east of Broadway in said city, to be improved as a public highway and for sewerage purposes.
This reservation is as follows : “ This act shall take effect on its passage ; provided that nothing in this act shall preclude the state from granting permission to the city of Cincinnati to enter upon and improve, as a public highway and for sewerage purposes, all or any part of the Miami and Erie canal which extends from the east side of Broadway in said city, to the Ohio river, the state hereby reserving the .right to make such grant.”
The rights which the lessees of the public works acquired under the act of 1861, to the * leases of surplus water” connected with or appertaining to the Miami and Erie ■canal east of Broadway, “ owned by the state for the purpose of being used in connection therewith, with the right to have additional surplus water,” were held by these les•sees subject to this proviso or reservation.
'By the terms of the act all “ leases of surplus waterf at .any of the locks eaBt of Broadway, and “ the right to additional surplus water,” passed to these lessees for the term of ten years; but subject to the right, in the state, reserved by said 18th section, to abandon this section as a •canal, and grant the same to the city, to be improved as a highway and for sewerage purposes. The term of ten years was afterward extended ten years more, from June 1, 1871, subject to the same conditions, and with the same rights and privileges, with certain exceptions not material to this case, as in the original lease. S. & S. 67.
Whatever rights were acquired under this act by the lessees were subject to be divested, by the exercise of this power reserved to the state to make this grant to the city. If the grant to the city for the purposes named destroyed the water power, and rendered these leases of surplus water, *637 or the right to have additional surplus water, valueless to-the lessees, they had no cause of complaint. Hubbard v. City of Toledo, 21 Ohio St. 379.
The lessees of the public works held their rights acquired under their lease, to this part of the canal, not by an.indefeasible title for the term, but subject to the power of the state to make this grant to the city.
If we concede that the language of section 1 of the act of 1861 is broad enough to confer upon these lessees this surplus water power at lock number 8, as well as the leases of water power then existing, yet if the grant to the city, and the improvement which it had the right to make, reudercd such water power useless or wholly destroyed the same, no right of the lessees was infringed.
Furthermore, any lease or conveyance of this water power to the plaintiffs by the lessees of the public works-was subject to the same infirmity.
In Hubbard v. The City of Toledo, 21 Ohio St. 379, it was held that the abandonment by the state of her canals, creates no liability on her part to respond in damages to parties holding leases of surplus water, under the act of. March 23, 1840.
If the persons holding leases of surplus water under the act of 1840, hold their private rights subject to be destroyed by an abandonment of the public use as a canal, a fortiori the lessees of the public works, under the act of 1861, hold their title to this part of the caual under no higher tenure.
We conclude, therefore, that the state, as against the-lessees of the public works, reserved the unqualified right to abandon that part of the canal east of Broadway, even though such abandonment rendered valueless all the waterpower, used or unused at the several locks, in the part so abandoned.
By the act of March 24,1863, the state exercised this reserved right, and granted to the city of Cincinnati that part-of the canal now in controversy, iu the following terms:
“ Section 1. That authority and permission shall be granted, in the manner hereinafter pointed out, to the city *638 of Cincinnati, to enter upon, improve, and occupy forever, as a public highway, and for sewerage purposes, all or any of that part of the Miami and Erie canal which extends from the east side of Broadway, in said city, to the Ohio river,.including the width thereof, as owned or held by the •state: but the said grant shall be made subject to all outstanding rights or claims, if any, with which it may conflict: Provided, that no work shall be done by said city authorities on the premises hereby granted until the plan of improvement shall be approved of by the board of public works.
“ Sec. 2. The said grant shall not extend to the revenues ■derived, from the water privileges in said canal, which are hereby expressly reserved; and the said grant shall be made upon the further condition that the said city, in the use as aforesaid of all or any portion of said canal, shall not obstruct the flow of water through said canal, nor destroy nor injure the present supply of said water for milling purposes, and that said city shall be liable for all damages that may accrue from such obstruction or injury; but it is not intended hereby to relieve the lessees of said canal, or their assignees, from any responsibilities imposed upon them by an act to provide for leasing the public works of the state, passed May 8, 1861, or by the instrument of lease executed in pursuance of said act, except as and to the extent that they may be interfered with as said city may, from time to time, enter upon, improve, and. occupy any part of said grant.
“ Sec. 3. "Whenever the council of said city, by a vote of not less than two-thirds of the whole number of members thereof, shall decide to use said canal, as herein authorized, the said council shall make known its decision to the governor; and thereupon the governor, in behalf of the state, shall execute and deliver to the city of Cincinnati a grant of the part of said canal herein described, for the uses and purposes before mentioned, and upon the terms and conditions specified in this act. The attorney-general shall prepare the form of said grant.
“ Sec. 4. This act shall not be construed to confer upon *639 said city any new power of taxation, or to borrow money, or to contract debts in the use as aforesaid of said canal.
“3®c. 5. This act shall take effect from and after its passage.”
The city accepted that part of the canal east of Broadway under this act, and received a conveyance from the governor in August, 1863.
Although the state might have made this grant to the ■city so as to give it absolute control of that part of the canal, so far as existing lessees were concerned, free from the conditions contained in this act, yet it did not do so. It saw proper to annex certain reservations and conditions to the grant.
This brings us to the inquiry, what right to this unused ■water power was reserved, either to the state or to the lessees of the public works?
The plaintiff' claims title under both. The averment is, ■that the state, “ by Philip Herzing, commissioner of the public works,” and the lessees, by “ George W. Manypenny, their agent,” sold and conveyed to plaintiff “all the interest of the said grantors respectively.” What were these respective interests? The plaintiff does not claim as the assignee of a pre-existing lease of water power, but under •a subsequent grant.
That the permission granted to the city, to enter upon, improve, and occupy forever as a public highway and for ■sewerage purposes, this section of the caual, was an abandonment of that part asa canal, can hardly be disputed.
Such improvement, and new use by the city was impossible, if any future use of it as a canal was reserved. Such reservation would be inconsistent with the grant.
But the legislature, for obvious reasons made this grant subject to certaiu conditions — some of which looked to its own rights; some to the interest, if not to the rights, of the leasees of the public works, and some to the rights and equities of the lessees of water privileges ; and all affecting the title of the state and the lessees of the public works to the water power in controversy. None of these conditions con *640 templated the future use of the part granted for purposes: of navigation, nor in express terms saved to the state the-surplus water power not theretofore leased or granted.
One of these conditions was, that the improvement and nse of the granted premises “ shall not obstruct the flow of water through said canal.”
As the state owned the whole canal west of Broadway and had leased the same for ten years, the outlet of which was through this abandoned section, this condition was necessary to prevent injury to the rest of the canal, and was for the benefit of the state, the owner in fee, as well as the lessees, who, during their term, had'the right to use it west of Broadway.
Another condition was, that the grant was made, “subject to all outstanding rights or claims, if any, with which it may conflict.”
If third persons, by virtue of any contract with the state,, had acquired rights, which were then outstanding, and in conflict with the proposed use, the grant was subject to-them.
The unused water power at lock number eight, as distinguished from water privileges or rights, was not an outstanding right in any one in 1863, when the grant was made to the city, and therefore not reserved to the state oribe lessees by this clause. The plaintiff’s title, if derived from the state, did not accrue until June 26, 1869, long after this grant to the city was made and accepted, and after a plan for the improvement was adopted by the city and approved by the board of public works, and after the-city was in possession, making the proposed improvement..
Another condition was, that the grant to the city did “ not extend to the revenues derived from the water privileges' in said canal, which are hereby expressly reserved.”
By this clause, the revenues derived from water privileges are reserved first to the lessees of the public works-during their term, and afterward to the state. The state-was under no obligations to the lessees of the canals to reserve these revenues, as in its lease to them it had reserved* *641 the right to abandon this part of the canal, free from this condition. It has done so, however, doubtless from a liberal regard to their interests, as well as to its own. The revenues derived from water privileges, not revenues derivable from water power, are expressly reserved. This language is not broad enough to include unused water power, to which no one had the privilege.
. When this clause is read in connection with that which saves “ all outstanding rights,” and the one providing that the city shall not “injure or destroy the present supply of said water for milling purposes, and that the city shall be liable for all damages that may accrue from such obstruction or injury,” there can be but little room to doubt that-the intention of the act was to protect existing rights, if any, of lessees of water privileges, and make the city liable to damages to them, as well as to the state or its lessees, for the obstruction of the flow.of water from Broadway to the river, and at the same time reserve the revenues arising-from outstanding leases of water power.
This view of these conditions is the only one consistent with the grant to the city.
It was to do no work toward converting the canal, “ until the plan of improvement shall be approved by the board of public works.”
In making its'plan, the city must save all outstanding rights. The contemplated improvement must, when made, not interfere with the flow of the water through to the river, nor with the present supply of water, nor with the water privileges, the revenues from which were reserved. Obviously, it would be an impossibility to form a plan that would admit of future grants of water power, where none already existed. The city could not know to what future use, or in what manner, this surplus water might be applied. In making such plan and improvement, reference-must be had to the existing condition of things, and existing rights which the state sought to protect. That the-board of public works so understood it, is manifest from. *642 their qualified approval of the plan submitted by the city-in 1863, by which they réserved the right to approve or ■disapprove any details, which may in any manner affect the lessees of water power, not the lessees of the public works, nor future purchasers of water power, but existing lessees of water power, under the act of 1840.
Under the 18th section of the act of 1861, neither the lessees, of the public works nor the lessees of water power, under the act of 1840, had the right to complain after the abandonment of this section as a canal, if no provision was made for the maintenance of this supply of water, and for a much stronger reason, those who purchased long after the title had passed to the city, and the improvement was nearly completed, could not complain.
In Malone v. Toledo, decided at the present term, it was held that, the state might abandon a branch of this canal, and trausfer it to the city of Toledo for a public highway and sewerage purposes, without the title becoming forfeited to the original proprietors.
In Hubbard v. Toledo, 21 Ohio St. 379, it was further held that lessees of water power under the act of 1840, held their rights subject to such transfer, and that they sustained no legal damages if the water privilege was destroyed thereby.
The act under which these decisions were made, like this, saved all outstanding rights and claims with which it might conflictand also made the city of Toledo liable “ for all damages which might accrue ” by reason of the improvement.
It was there held, that this last clause meant legal damages arising from a lawful demand, and as’ these water privileges were, under the act of 1840, revocable, and could be terminated whenever the public interest and that act authorized it, the lessees had no lawful demand either against the state or the city. The creation of water power did not enter into the purposes of the state in the construction of its canals.
This water power was an incident of the public improve *643 ment. Under the power of eminent domain, and to promote the public welfare, the state constructed and maintained these great artificial highways. It may well be doubted whether, in this case, the state could, after abandoning this section as a canal and granting it to the city for •another and totally different public use, still reserve to itself the right to keep up this water power solely for private use, and as a source of revenue. Good faith to existing lessees might warrant the state in so doing, but it'cau not be supposed that it was the intention of the act of 1863, not only to protect existing and outstanding rights, but to reserve to itself the power in the future to create new rights.
By so doiug, the water power would, cease to be an incident to the public use, and the state would be engaged in the private enterprise of keeping up and renting water power after it ceased to act as a government in keeping up the public use. "While, for the purposes of this case, the state might impose upon the city these conditions in favor of those having rights and claims to the surplus water, it by no means follows that it could do so in favor of subsequent purchasers of unused water power.
These considerations lead us to conclude that it was not the intention of the legislature to protect and save, as the subject of future grant, the water power to which there was not then an outstanding right or claim.
The clause of the act of 1863, making, the city liable for .all damages is significant. There can be no legal damage without an-injury, and no injury where no legal right is invaded. As plaintiff’stitle,if any, accrued long afterthegrant to the city, which only saved existing rights and present supply of water, he can not complain, if his grantors could not. The lessees of the public works took their lease subject to the power of the state to make this grant, qualified by oim condition only — that is, that the residue of the canal should not be injured by the contemplated improvement.
Eor reasons doubtless satisfactory to the legislature, certain rights were, however, reserved for the benefit of the state, the lessees of water power, and the lessees of the pub- *644 lie works. In making this grant to the city for a public-use destructive of the former one, it was never intended to reserve to the state or to the lessees, the power to create new water rights inconsistent with the purposes of the grant. When the rights acquired before the title vested in the city were fully protected, the object had in view by the state was accomplished.
The right of no one was invaded when the plan for the-conversion of the canal into a sewer and avenue was' approved by the board of public works, although that plan involved the destruction of the unused water power at lock No. 8.
It was never intended to preserve this water power forever as a subject of future sale or lease.
If the state could do this after the canal was abandoned, it could carry on any private business.
This view is strengthened by the latter clause of section 2. of the act of 1868, wherein it is provided that the lessees of the canal, or their assignees, shall not be relieved of the responsibilities imposed on them by the act of 1861, “ except to the extent that they may be interfered with as said city may from time to time enter upon, improve, and occupy any part of said grant.”
The “ responsibilities” referred to are doubtless those of keeping the canal in good condition and repair, and faithfully performing all legal contracts of the state, as required by said act.
The lessees are, by this clause, relieved from these responsibilities to keep this section in repair, and to fulfill the contracts of the state, under its leases of water privileges, whenever the city shall have taken possession and made such plans and improvements as terminated its use as a canal.
The rights of these lessees are only co-extensive with their obligations under their lease.
The obligations or responsibilities of the lessees cease when the grant to the city becomes effective. Why should, not any right they may have had, if any, to sell unused water power, also cease ?
*645 It can not be supposed that the legislature intended to give ■these lessees power to make new leases of water power, or create new rights to the same, after transferring the canal to the city, aud at the same time exempt them from all liability to keep that part of the canal in repair.
In 1863 the grant was accepted by the city, and a convey•ance of the same was executed and delivered.
It entered into possession, formed and submitted to the board of public works the plan of improving the property, to convert it into an avenue.and a sewer, which that board .approved, except as to details, in favor of lessees of water power. A large part of the work was completed prior to the inception of plaintiff’s title.
Whatever may have been conveyed in 1869 by the state ■or the lessees, was subordinate to the right of the city. The board of public works could not, after approving of this improvement, create new water rights and then compel the city to change its plan of improvement so as to furnish the new supply of water demanded.
We conclude that neither the State of Ohio nor the lessees of the public works, by the conveyance in 1869, conferred ■upon the paintiff any such substantial and positive interests as can be protected by injunction agaiust the city.
When the State of Ohio transferred this part of the canal to the city for a different public use, made necessary by its increasing population, it was not intended to reserve for all time the right to create new water privileges, where none existed when the title passed to the city. It was well known that radical changes must be made to convert a canal -into a great avenue and sewer.
These changes involved the destruction of the water levels arising from the locks. To save the rights of those to whom the state had bound itself by contracts, and to preserve the usefulness of the remainder of the canal for public purposes, these conditions and reservations were imposed upon the city; but it was never intended that after the canal had ceased to be, and the city was in full possession, executing a plan approved by the proper authority, except *646 as to details, in favor of lessees of water power, that the state should hold this surplus water power to be granted out indefinitely. Conceding that the state possesses the power to do this, a nthus convert what was but an incident of the.public use into an independent right, yet such an extraordinary exercise of sovereignty could only be manifested by the clearest and most unmistakable language. The state is an instrumentality of government and not a corporation to engage in a private enterprise. After the canal was abandoned, surplus water power, not vested in any one, could not be maintained, and made the subject of future-sale or lease. No construction of this grant is admissible^, which sanctions such a misuse of the powers of the state.
Such a reservation would be an intolerable burden upon the grant in all future time, and can not be predicated on implications or inferences founded on a doubtful construction of the act, especially when it is perfectly obvious that neither the city, when she accepted the gift, nor the board of public works, when it approved the plan of converting a canal into a sewer and an avenue, contemplated the creation of new water privileges and new sources of revenue.
It would be interesting, though wholly needless, to inquire by what authority “ Philip Herzing, commissioner of public works,” either jointly with the lessees, or separately, and with or without the assent of the board of public works, could “ grant, bargain, sell, and convey” to the plaintiff, “its successors and assigns forever,” what is claimed to be a valuable water power, and release the grantees from the ¿payment of all water rents. We are referred to the 10th section of the act of 1861 for such authority, but that is only a limitation on the power of the lessees under that act to assign their lease, or any interest therein. It provides: That said lessee or lessees shall not assign their lease, or any interest therein, without the assent of the board of public works “ thereto entered in writing on said lease, and upon the journal of said board.”
This provision was to prevent any of the parties with whom the state might contract, from terminating their ob *647 ligations to the state without the consent of the board of public works.
No such authority can be deduced from this section, and we are not referred to or advised of any other source from which to deduce it.
The petition avers that the conveyance was in consideration of six thousand dollars in money, and other valuable considerations; but whether this sum was ever paid, or, if so, to whom, the pleader does not inform us. Eor the purposes of this case we need not inquire, though the fact might have an important beariug on the plaintiff's equity.
Counsel, by their lucid and forcible presentation of their views, have greatly aided us ; but we can not follow them beyond the record in discussing a supposed state of facts not appearing in the petition.
The demurrer was properly sustained.
Judgment is affirmed.